Appellant. Mr. Parker for the amicus curiae, Ms. Hughes for the appellate. May it please the court. I'm Josh Parker presenting argument as amicus in support of Mark Stubblefield and I'd like to reserve two minutes for rebuttal. Mark Stubblefield's bank robbery convictions rested largely on pre-trial photo array identifications with no physical evidence tying him to any of the robberies. His trial counsel rendered ineffective assistance by failing to move to suppress those identifications even after the trial court expressly invited counsel to do so. Had trial counsel so moved, the evidence would have been suppressed as the fruit of a warrantless arrest without probable cause and there's a reasonable probability the jury would not have found Mr. Stubblefield guilty. Accordingly, this court should grant Mr. Stubblefield a certificate of appealability and either order the district court to vacate his sentence as one imposed in violation of the Sixth Amendment or at minimum remand to the district court for an evidentiary hearing because the record does not conclusively show he's entitled to no relief. Suppose we agree with the government that there was sufficient evidence to support probable cause for the arrest. Then we don't have to get to that issue, right? Isn't that right? To be clear, the relevant standard laid out in Kimmelman is that the petitioner needs to show an ineffective assistance. No, but if probable cause supported the arrest, then the photos weren't the fruits of an illegal search, right? Yes, your honor. So you agree we need to deal with that issue first? I would agree with that. But just to be clear, your honor, if this court doesn't think that there is enough in the current record to support a finding of no probable cause, a remand is what the appropriate action would be. I understand that. Maybe you want to focus on the probable cause. Yeah, so starting with probable cause, the match between the witness descriptions of the suspect, of the bank robbery suspect and Mr. Stubblefield's appearance on the day of the May 12th arrest was not sufficiently specific to contribute meaningfully to probable cause. Mr. Stubblefield matched the description insofar as he was a short, middle-aged black male. He lacked the distinctive scarring on the left side of his face or marks on the left side of his face that was depicted in the sketch and described by the robbery witnesses. Although he had somewhat loose facial skin, both Agent DeJesus and Detective Baylor testified that that skin only created indentations or became distinct when he made certain facial expressions. Wait a second. Are you focusing now on the stop or the arrest? Focusing on the arrest. Okay, you're focusing on the arrest. Okay, but in addition to that, they had, in addition to the facial, he was only, he was very, very short, right? In fact, the government says fewer than 5% of American males are that short, right? Yes, Your Honor. So he's very short. They had a tip, almost a double tip, right? The person who identified him said, and found he was at that very spot after the robbery. Your Honor, I have two responses to that. First, there is no evidence in the record suggesting that, or we cannot conclude from the record, that the person stopped, Mr. Stubblefield, was the same person that the tipster pointed out. The tipster didn't say that the suspect was wearing a red hoodie or was wearing a black shirt or anything that would cause them to be able to identify him. And this was a dangerous station. There absolutely could have been other short, middle-aged black males in the area. The second response is that the government asserts that Mr. Stubblefield was in this 5'1 to 5'3 range and the police knew that. But that is not supported by the record. That information simply comes from Agent DeJesus's affidavit. Agent DeJesus was just one of the officers who investigated the April 7th robbery. As in Mark Mosley's testimony, he was another employee at the bank. He explains that everyone was interviewed. And in his description at trial, he said Mark Stubblefield was, he said the suspect was around 5'5". And even the clerk, Dolores Gonzalez, who Agent DeJesus said was between 5'1 and 5'2", at trial she said he had a maximum height of 5'5". So we can conclude he's short on the record, but we can't conclude that he is within that 5 percentile range that the government said. And if you look at comparable... It makes a difference here that apparently the police sketch that was done was fairly good, better than such sketches usually are, not so generic. It was good enough at least for someone who was in that vicinity to recognize that sketch and to say, I think I know this person and I think his name is Mark, which is, you know, seems to take it out of the sketch. Your Honor, a couple of responses to that. First, Mr. Stubblefield was matching the, was missing the one very distinctive characteristic of that sketch, which is scarring or marks on the left side of his face. But second, there is no evidence in the record that the arresting officers even saw Mr. Stubblefield's face. All we know is that they, as they approached in their police car, at some point Mr. Stubblefield fled. And the next thing we know, the police are ordering him to lie to the ground. So they don't know it's the same person that the tipster was pointing out, because for all we know, the tipster just said go to the intersection at 7th and Rhode Island. We have no idea what the time gap is. This is a Monday morning and as the D.C. Court of Appeals explained to Brown, street scenes change rapidly. So we can't rely on him matching the sketch to his fellow Stubblefield. When did they have to have probable cause rather than reasonable suspicion? At the moment he was ordered to lie on the ground or when the FBI agent arrived and arrested him? At what moment did they need to have probable cause? Well, our understanding is when they ordered him to lie to the ground, there was no separate. They ordered him to lie to the ground and placed him in handcuffs at basically the same instance. So at that moment is when they needed probable cause. And to be clear, the government abandoned the reasonable suspicion argument. So that's not a good pursuit. On the facial markings, it wasn't just that he had loose skin, but that he had, I thought on his skin. Is that accurate? That's accurate in certain situations. As we say in the brief, both Agent DeJesus and Detective Baylor said those indentations became apparent and stood out when he made certain facial expressions. If you look at his resting face, if you look at the booking photograph, sure there are kind of loose wrinkles, but most... I can't tell much from that booking photograph, to be honest. It's hard to tell. And that might be the exact... Indentations on both sides of his face or left side primarily? Is there a way to say that? Based on testimony, based on trial testimony, it was both sides of the face. And was the witness testimony consistent in that the scarring and marking was only on the left side? Or was it ambiguous? No, there was witness testimony, some saying right, some saying left side, but the point is that's not sufficiently distinctive. Many middle-aged men have wrinkles or marks or a mole or a birthmark. At that level of generality, that's not specific enough to generate probable cause. Moving quickly to the photoarray, suppressibility of the photoarray evidence, the government does not dispute that... But it says, I'm looking at the quote, maybe Judge Rollett and I will get the same one. It says, this is one of the witnesses, indentations on his face or some type of marking or scars that were very pronounced. Sure. He's not saying this is sort of an average middle-aged face with moles on it. Sure. There were varying witness descriptions. That's one of them. But if that is the description you take, Mr. Stubblefield does not match that description. He did... Both Detective DeJesus and Agent... And Detective Baylor testified that there were no... There was no scarring or cuts on his face. Are you challenging the district court's finding that Stubblefield fled? No, we're not. We are not challenging the finding that we fled. We're just saying that there's no indication. Wardlow tells us the nature of the flight is important. Was it in response to a command to halt? Was it headlong? And all we know on the current record is that he walked crisply away, which contributes little, if anything, to probable cause. If I could... Moving briefly to the suppressibility of the photo array evidence. Just the long-standing rule under the Fourth Amendment is that the fruit of warrantless arrests made without probable cause is suppressible, and that's grounded in the very deterrence considerations the government emphasizes. The police are charged with knowing the probable cause standard, and when they engage in deliberate conduct that results in stopping someone without probable cause, appreciable deterrence results when you exclude evidence that comes by way of that stop. The government's attested... And what happens when the evidence is your face, which is already on public display at all times? It's not... Ordinarily, what's being suppressed is something that's yielded up to the police or disclosed to the police as a result of the wrongful conduct, but the face is there. Your Honor, with due respect, the evidence is not the face. The evidence is the booking photograph and the pretrial identifications, a specific depiction of the face. Courts regularly suppress line-ups and show-ups that use the defendant's body and face, but we don't say those aren't suppressible. Similarly here, a photo array is a particular form of evidence and they needed to arrest him. It attends an arrest, so the police needed to engage in an illegal arrest to secure that photo array, and that's why that's suppressible. Okay, thank you. Thank you. Good morning. Lina Hughes on behalf of the United States. May it please the court, Mr. DeFranco, the sole claim on appeal is that defense counsel was ineffective in failing to move to suppress his booking photograph and the pretrial identifications that referenced it. That claim does not entitle him to relief because he cannot show that defense counsel's performance was incompetent or that he was prejudiced by it, and I'd like to begin with why defense counsel's performance was not deficient. The defense counsel does not perform deficiently in not making a motion of doubtful merit that, even if granted, is unlikely to affect the course of her client's trial. And it is especially reasonable to forego making that motion when defense counsel instead concentrates her efforts on motions that, if granted, will eliminate certain evidence from trial. And here, defense counsel could reasonably conclude that the motion described by Mr. Stubblefield would be a waste of her limited resources because, even if she succeeded in suppressing the booking photograph and the other photograph of Mr. Stubblefield... So that just doesn't seem accurate on this record. I thought the point was that by the time of trial he had gained weight, he'd had some surgery or something, dental surgery, that affected the way the skin was on his face, and presumably there's a reason that the government didn't do any in court at all identifications of him at all. His appearance changed. I think that might relate to whether there can be prejudice here as to whether there's a reasonable likelihood, a reasonable probability that the result of the trial would have been different. But I don't think that can go to whether defense counsel's performance is deficient. I thought you just said the government would be able to get a picture and just identify him another way, and I'm not sure how that's true in this situation. Well, I do think that defense counsel could have anticipated or should, as a matter of professional prevailing norms, anticipated that her client's appearance was going to transform vastly by the time of trial. So if we are considering whether it was objectively reasonable for defense counsel to believe that this motion wasn't going to positively affect the course of her client's trial, that was reasonable. And the reason that she could believe that a second photograph would be taken and not be suppressible has to do with basic attenuation principles. Can I ask you to stick with that subject? No, you go ahead. I'm curious about why you began with this about its antecedent point that the arrest was supported by probable cause? Not at all, Your Honor. However, this is an ineffective assistance of counsel claim, and we think that it's important to note what additional work. Okay, but do you disagree with the answer I got to my first question, which is if we think that you're right, that there is probable cause, we don't have to address anything else in the case, right? That's absolutely right. All right, so maybe you can respond to the argument Mr. Parker made about why there isn't sufficient probable cause, and particularly his arguments about the sketch and Stubblefield's face. Well, I believe that contrary to Amicus's argument that there were only generic descriptions or too varied of descriptions, the descriptions here were actually very described to officers, the robber as being between 5'1 and 5'3, thin, middle-aged African-American with a sunken face, distinctive facial markings, and a mustache. And Mr. Stubblefield matches that to a T. At the time of his arrest, he was 5'2 and he weighed 123 pounds, he had a sunken face, and he had deep impressions or indentations on his cheeks. And it's just not the case that those impressions or indentations are only facial expressions. There was repeated testimony here that the indentations are visible when his face is in a normal posture. That's at J.A. 72 and 188. Is Amicus correct that some witnesses also said he might be as tall as 5'5? So Amicus has cited the testimony of Mark Mosley, the loan administrator at Washington First Bank, who at trial testified that the robber was possibly 5'5 or shorter. There are a couple points I'd like to make about that. For one thing, three out of the four witnesses to the robbery told officers that he was between 5'1 and 5'3. And even if we look at all of the robberies here, which is something Amicus has also asked you to do, the majority of the witnesses to the charged robberies said that the robber was between 5'5 and 5'3. And there were only three out of the 14 witnesses to the charged robberies who said it was even possible that the robber could have been taller than 5'4. And in addition, I actually think the record establishes that the testimony of Mark Mosley, which is trial testimony that Amicus claims the police knew, was not known to the police prior to Mr. Stubblefield's arrest. And that's because at the preliminary hearing, Special Agent Luis de Jesus testified that only three witnesses to the April 7th robbery gave descriptions to the police. And he listed them by title. And Mark Mosley, who is the loan administrator and not the assistant branch manager, as I think Amicus accidentally refers to him as, was not among those people. And that's also consistent with what Mr. Mark Mosley's testimony was at trial. He said that he couldn't  And on the question of probable cause, what do we do with the fact that because no motion was filed, there's some critically important gaps in the record here in determining probable cause? We have no information at all about how much time elapsed between the tip from the informant and when the officers showed up in this area, where we're told thousands of people are coming and going on a Monday morning. We don't know that the officers saw his face or facial markings before ordering him to lay down on the ground. There's just no information at all. In fact, the government has given up the issue of what the actual arresting officers saw when they stopped him. And we have nothing about the nature of the flight. And we don't have it, obviously, because no motion was filed. Don't we need a record on that information to determine probable cause? Of course, these gaps could be filled in an evidentiary hearing if Your Honor's thought it was necessary. But we think that even with them, it is still clear, it is conclusively established by the record that there is, there was probable cause to arrest him. How can it be conclusively established by the record if we don't know that anybody saw his face or the markings? Maybe they just saw a short black man and chased him. Well, there are a couple of things about that, Your Honor. One is that we know that the officers were dispatched to this intersection to look for the robbery suspect, and that when they arrived there, they saw the suspect and they approached him. There was also testimony that his indentations are visible when his face is in a normal posture. But also note that every single witness who observed the robber, even those who were not face-to-face with him, noticed some form of facial disfiguration or markings. So I actually think that there's every reason to believe that officers would have been able to notice something off about the suspect's face that they approached. And of course, probable cause is not certainty. They don't need to be certain that the person that they're approaching and arresting is the robber. There just need to be facts that, on the basis of which a prudent officer would be warranted in believing. Does the law make it pretty important to know how much time elapsed between the tip from this fellow who said, hey, he's back here again and when the officers arrived? Again, given that you've got an area that's heavily trafficked? Two points in response to that. One is I don't think the amount of time that passed here was significant. Although we don't know the exact number of minutes between the phone call and the police arrival, we do know that both of these things happened on the morning of May 12th. The police arrived at 7.30 a.m. And I would point this court to its decision in United States v. Lucas, where an entire 24 hours passed between the time when the officer spoke about the location of two women and the time when the officer then observed the women at that location. And the court found that there was probable cause to believe that the women observed were the women described in the tipster. Was that a full month after the crime had been committed in Lucas? No, it was not. Don't we need to factor that in? I mean, you've got a month after, I think at least a month after the crime was committed and then an unknown time from a tipster. And we have no idea what that gap is. And all we know is that they thought somebody who fit this description was there at the same time probably a couple thousand other people were there. It just seems like important gaps. Well, what I would say actually in response to the proposition that Amicus has put forward here, that there could have been a number of other men in the area that also matched the descriptions of the robber, I think that's wrong for a number of reasons. To begin with, if there were a number of other men in the area that looked like Mr. Stubblefield, that is something that is within his personal knowledge. And he submitted a sworn statement here in support of his motion to vacate. And he never said that was the case. And Amicus has faulted the district court for failing to make a factual finding about the presence of other such men. But I don't think it was incumbent upon the district court to make that finding when nobody was claiming that that factual dispute existed. And in addition, that's because his attorney didn't raise this whole issue. That's why there's no record. We can't sort of blame him when he was telling his attorney. It is on the record he asked his attorney to make this suppression motion, and she didn't. Actually, my point is that he submitted a sworn statement in support of his motion to vacate, where he described the circumstances of his arrest. But how is he going to know how many? I mean, is he going to say, I know other folks in this area who are short like me? I think he could have mentioned if there were other men at the exact intersection that was described that looked like him. The police could say there wasn't anyone else that size, too, but we don't have anything from police. We don't know anything about what these police saw when they approached. That's the problem, isn't it? If your Honor thought that it were necessary to have an evidentiary hearing on that point, then those gaps could be filled in. But of course, we don't think that he can establish either deficient performance or prejudice even absent that. Thank you. Mr. Parker was out of time, right? Mr. Parker was out of time. You can take one minute if you'd like it, Mr. Parker. A couple quick points on probable cause. First, as Judge Millett has emphasized, there's no evidence that the person stopped was the same person that the tipster pointed out. Does there have to be such evidence for probable cause? We think that it's important here because... I said does there have to be such evidence for probable cause. There does not have to be such evidence for probable cause. Okay, go on with your other points. But the other factors... The government says that he had a mustache, that he was thin. There's absolutely no evidence. A, the trial court didn't make any findings on that, didn't say he matched the description insofar as he had a mustache and he was thin. And there's no evidence that the arresting officers saw he had a mustache or his weight. And just one other point, which is that the level of detail when you're just matching a lookout description has to be quite detailed. In the United States, to be short, this court's case, this court was faced with a description of an 18 to 19-year-old black male with a waist-length brown jacket, short afro haircut, blue pants, found 15 minutes after the robbery, a block and a half from the robbery scene. That did not suffice for probable cause. In that case, there was a conflict in the record about the color of his coat. At minimum, there were other differences, right? The conflict was whether it was camel colored or brown. That was not sufficiently... At the very least, this court should remand for an evidentiary hearing because there is no way this record conclusively shows Mr. Stubblefield is entitled to no relief. Thank you. Mr. Parker, the court appointed you as amicus and we're grateful to you for your help. Thank you.
judges: Tatel, Brown, Millett